IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BYRON E. ADAMS, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
|   vs. | )   Case No.  **3:13-cv-00985-JPG-PMF** |
| | ) |
| V SMITH, *et al.*, | ) |
| | ) |
|        Defendants. | ) |

**REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

Before the court are Plaintiff Byron E. Adams' (Doc. 20) motion for a preliminary injunction, (Doc. 59) motion for a temporary restraining order, and (Doc. 62) motion for default judgment. For the following reasons, it is recommended that Adams' (Doc. 20) motion for a preliminary injunction, (Doc. 59) motion for a temporary restraining order, and (Doc. 62) motion for default judgment be denied.

The undersigned detailed the factual background of this case in prior Report and Recommendation dated January 6, 2014 (Doc. 33) as follows:

> Adams has been incarcerated with the Illinois Department of Corrections ("IDOC") since 2012 and is currently serving a 60-year prison term. He is first eligible for parole in the year 2069. Adams alleges that he was previously incarcerated with the IDOC in Stateville Correctional Center ("Stateville") where he witnessed the murder of a correctional officer. By the summer of 2013, Adams was incarcerated with the IDOC and housed in general population in a two-man cell with an inmate named "Vaughn" at Menard Correctional Center ("Menard"). In June and July of 2013, he made repeated requests to be placed in protective custody status because Defendant Correctional Officer ("C\O") Veath had purportedly exposed a letter that Adams had written to a mental health professional at Menard stating that he feared for his life because Vaughn was a gang member who may seek retribution for Adams' involvement in the trial regarding the 1977 Stateville killing. According to Adams, Vaughn told him that he learned of the contents of the letter from C\O Veath. Vaughn subsequently

1

made verbal threats and yelled out to other inmates at Menard that Adams was a "stool pigeon."

He was moved to a one-man cell sometime after falsely informing prison officials that he planned to harm himself, but Adams was ultimately denied protective custody status after appealing the issue through the entire IDOC administrative review process. He states that he fears for his life because 1) other inmate gang members may have found out about his involvement in the 1977 Stateville incident, and 2) other Menard correctional officers have learned that he attempted to bring to light that C\O Veath wrongfully gave information to another inmate that may place him danger. …

Adams seeks injunctive relief in the form of a transfer out of Menard to Pontiac Correctional Center ("Pontiac"), where he seeks to be housed in a protective custody for the remainder of his 60-year sentence. *See* Doc. 1 at 6. He has also filed several motions with the intention of informing the Court of his present conditions at Menard and requesting that the court order that he be placed in protective custody status. *See* Docs. 14, 18, 20, 30. Two of these motions have been construed as requests for injunctive relief (Docs. 20, 30). Adams indicates that he is housed in general population in a two-man cell at Menard. He continually makes unsuccessful protective custody requests and is subjected to threats from other inmates at Menard.

For their part, the Defendants have not yet entered this case as a result of unknown service-related issues. This is part of the reason why the Court has opted to construe the instant request for injunctive relief (Doc. 30) as an emergency motion for a TRO. However, it can be gleaned from exhibits submitted by Adams that Menard prison officials have taken the position that Adams has only submitted generalized allegations of a threat to his safety and has not made them aware of any specific information that would cause them to take immediate action to protect him. *See* Doc. 18 at 16 (letter from the Administrative Review Board dated August 28, 2013 stating that "Offender has not provided any specific information regarding other offenders that have threatened him while at Menard").

… He states that he now shares a cell with an inmate named "Gates." He alleges that sometime in late December 2013, Gates told Adams that he had a knife in the cell. Around 3:30 a.m. of the next morning, Adams informed a guard that his cellmate had a knife and threatened him with it. The guard returned with a lieutenant and shook down (i.e. searched) the cell. After the shakedown, prison officials made the decision to leave Adams and Gates in the same cell. Adams was not informed as to whether contraband was found in the cell. After the incident, Adams claims he cannot sleep because he is afraid of an attack. He believes that prison officials lied to him about moving him to a one-man cell and deliberately placed him back in the cell with an inmate that had a knife. …

Adams states that he fears that he will be attacked by Gates with a knife in his sleep. However, he does not clearly state that he has ever seen the knife and does not describe it. No actual attack has occurred. The cell was searched by prison officials, and Adams returned to the cell with Gates so it can safely be assumed that no contraband was found in the cell. …

>Finally, it is noted that Adams has repeatedly requested throughout his filings in this case that the Court order that he be placed in a one-man cell in protective custody status at Menard and/or that he be transferred to Pontiac's protective custody unit for the remainder of his 60-year sentence. …

Since the January 2014 Report, Defendant V Smith entered the case, and the Clerk of Court entered default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure against Defendant Warden after initially failing to appear. *See* Doc. 56.  However, Warden recently appeared and entry of default has been vacated pursuant to Rule 55(c). *See* Docs. 63.  Accordingly, Adams' (Doc. 62) motion for default judgment should be denied as moot.

After all of the Defendants appeared, the court held an expedited preliminary injunction hearing on April 7, 2014.  Adams appeared by video at the hearing and testified.  He informed the court that he presently housed in the hospital at Menard due to burns he sustained on his feet from a steam pipe.  Because he has infection, he stated he will be in the hospital "for awhile" and does not know where he will be placed once he leaves the hospital.  Adams reiterated his general belief that inmates are out to get him because of his involvement in the 1977 Stateville incident.  However, he could not point to any imminent threat of harm.  He stated that an inmate named "Eddie" made a threat in September 2013, but he has not seen or heard from him since that time (no assault occurred).  The previous Report (Doc. 33) summarized Adams' problems with former cellmate Gates.  Adams reports that his new cellmate following Gates was an inmate named "Mosely."  According to Adams, Mosely threatened to kill Adams after Gates told Mosely that Adams was a snitch.  Correctional staff responded by telling Mosely to "knock it off" and sent Adams to protective custody.  Adams also fears of an assault from prison staff.  He notified the court that on March 31, a correctional officer assaulted him.  He believes that the assault

occurred because he filed lawsuits against correctional authorities.[1] When the court asked what sort of injunctive remedy could be fashioned in this case, Adams responded only generally that he believed he was in danger.

"The purpose of preliminary injunctive relief is 'to minimize the hardship to the parties pending the ultimate resolution of the lawsuit.' " *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc*., 149 F.3d 722, 726 (7th Cir. 1998) (quoting *Faheem–El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988)). "In this circuit, the standards for a TRO and a preliminary injunction are functionally identical." *Crue v. Aiken*, 137 F. Supp. 2d 1076, 1082-83 (C.D. Ill. 2001) (citation omitted). "In order to obtain a preliminary injunction, the moving party must show that: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004) (citing *Erickson v. Trinity Theatre, Inc*., 13 F.3d 1061, 1067 (7th Cir.1994)). "If the movant can meet this threshold burden, then the inquiry becomes a sliding scale analysis where these factors are weighed against one another." *Id*. (citations and internal quotations omitted).

With respect to preliminary injunctive relief regarding prison conditions, federal statutory law provides that such relief must be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, the Court must give

---

[1] If such an assault by prison staff did occur, it certainly could serve as the basis for another lawsuit. The scope of the allegations in this case are limited to Adams' allegations that he was placed in danger by prison staff after they informed inmates that he testified in the 1977 Stateville killing incident.

"substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief …" *Id*.

Adams' requests for injunctive relief should be denied because he is unable to demonstrate a likelihood of success on the merits or that he will suffer irreparable harm. In order to succeed on his claim, Adams must demonstrate that 1) "he is incarcerated under conditions posing a substantial risk of serious harm," and 2) the Defendants were deliberate indifferent to his health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994) (citations omitted). Adams believes that he is subject to an increased likelihood of an attack by other inmates at Menard due to his participation in an incident occurring 37 years ago in another prison. It cannot be overstated that prisons are inherently dangerous places. *See id*. at 858-59 ("Prisons are necessarily dangerous places; they house society's most antisocial and violent people in close proximity with one another. Regrettably, '[s]ome level of brutality and sexual aggression among [prisoners] is inevitable no matter what the guards do ... unless all prisoners are locked in their cells 24 hours a day and sedated." *McGill v. Duckworth*, 944 F.2d 344, 348 (CA7 1991)"). Here, Adams has not come forward with any evidence, other than his own subjective and generalized beliefs, that he is being subjected to conditions posing a substantial risk of serious harm. He has provided no testimony of serious assaults while incarcerated and is unable to provide the court with specifics concerning imminent attacks. In sum, there is no evidence that Adams is being subjected to any greater risk of harm than what is considered to be "normal" in prison life. Even if everything Adams has stated were true, more is needed than the mere possibility of injury. *See Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 788 (7th Cir. 2011) *cert. denied*, 132 S. Ct. 1635, 182 L. Ed. 2d 246 (2012) ("For preliminary relief to be granted, the irreparable harm must … be likely."). His request for injunctive relief should

be denied.  *See Chicago Dist. Council of Carpenters Pension Fund v. K & I Constr., Inc.*, 270 F.3d 1060, 1064 (7th Cir. 2001) ("A preliminary injunction is an extraordinary remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."). *See also* Doc. 33 at 5-7 (concluding that the scope of injunctive relief requested in this case runs afoul of the Prison Litigation Reform Act and outlining the policy reasons District Courts should avoid intrusion into the state prison system).

For the forgoing reasons, it is recommended that Adams' (Doc. 20) motion for a preliminary injunction, (Doc. 59) motion for a temporary restraining order, and (Doc. 62) motion for default judgment be denied.

**SO RECOMMENDED.**

**DATED: April 7, 2014.**

*s/ Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**