IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BYRON ADAMS, A60952,** | ) |
| **Plaintiff,** | ) ) ) |
| vs. | ) ) Case No. 13-CV-985-SMY-PMF |
| **V. SMITH and MENARD CORRECTIONAL CENTER,** | ) ) ) ) |
| **Defendants.** | ) ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Byron Adams, an inmate currently incarcerated at Pontiac Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 alleging that Defendant Smith, in his individual capacity, and Defendant Harrington, in his official capacity, violated his Eighth Amendment rights. Adams seeks monetary damages and injunctive relief. Now pending before the Court is Defendants' Motion for Summary Judgment (Doc. 126). For the following reasons, the motion is **GRANTED**.

## BACKGROUND

Adams is an inmate currently incarcerated at Pontiac, but was previously housed at Menard Correctional Center ("Menard"). The incidents that give rise to this litigation occurred while he was at Menard. After arriving at Menard, Adams was placed in a one man cell (Doc. 127-1, p. 15). In June 2013, Adams was notified that he would soon be placed in a two man cell (Doc. 127-1, p. 15).

On June 13, 2013, C/O Smith and a Menard mental health care professional named Ms. Morrison stopped by Adams' cell (Doc. 1, p. 4). Adams wanted to discuss his impending

transfer to a two man cell and told Ms. Morrison that he wanted to speak to her privately. *Id*. Ms. Morrison declined to speak to Adams privately, but told him that he could write her a letter. *Id*.

Adams testified at his deposition that he was fearful of being placed in a two man cell because he was concerned about gang reprisals for his 1977 Stateville testimony[1] (Doc. 127-1, p. 15). Adams stated "[I] didn't want to be in a cell with a gang-banger, because a gang member killed Lieutenant Burd, and if I got in a cell with the wrong one who knew about what happened, you know, it would be a situation" (Doc. 127-1, p. 15).

On June 14, 2013, Adams was placed in two man cell with inmate James Vaughn (Doc. 127-2). He believed Vaughn was a gang member, but did not know which gang Vaughn was affiliated with (Doc. 127-1, p. 14). Adams was dissatisfied with the cell assignment. *Id*. He wrote a letter to Ms. Morrison stating that he would like to be placed back in a one man cell (Doc. 1, p. 4). Adams discussed the Stateville incident in the letter and said that he needed a one man cell due to the risk of a gang reprisal. *Id*. Adams also stated that he did not mention these issues with Smith present because of an incident[2] that occurred with Smith in the Menard Health Care Unit ("HCU") (Doc. 1, p. 5). On the evening of June 14, 2013, Adams finished the letter and placed it in his cell bars to be delivered (Doc. 127-1, p. 21).

On the morning of June 15, 2013, a nurse named Heather McGee came to Adams' gallery to apply bandages to his feet for an unrelated injury (Doc. 127-1, p. 23). Nurse McGee remarked that she had read Adams' letter to Ms. Morrison and that his involvement in the 1977 Stateville

---

[1] In January 1977, while incarcerated at Stateville Correctional Center, Adams witnessed the murder of Peter Burd, a correctional lieutenant, by a member of the Gangster Disciples (Doc. 127-1, p. 13). Adams subsequently testified against the gang member (*Id*. at p. 16).
[2] Sometime earlier in 2013, Adams heard Smith remark that a prisoner was assaulted in the shower because he was "telling [the] administration stuff" (Doc. 127-1, p. 20). Adams interpreted Smith's remark to mean that Smith was calling the prisoner a "snitch". Adams did not want Smith to label him a snitch and so he did not want to discuss his celling issue with Smith present. *Id*.

2

incident was a good thing. *Id*. Adams told Nurse McGee that the letter was only intended for Ms. Morrison and that it should not be shared with anyone else. *Id.* After Nurse McGee finished bandaging Adams' feet, he returned to his cell. *Id.* After Adams was back in his cell, Smith stopped by to take Vaughn to the showers (Doc. 127-1, p. 24). Adams described the following sequence of events at his deposition:

> "Officer Smith come and get [sic] my cellmate to take him to the shower. I hadn't told Officer Smith nothing was wrong with me or anything, but when he came back with my cellmate, he asked me is you okay, and I was wondering what he was talking about, I didn't know what he was talking about. I just told him, yeah, I'm okay. My cellie come in and he started acting funny and stuff, you know, throwing stuff around, acted like he wanted to fight with me. I didn't know what was going on. So I sat in the bed, got some papers, was writing the Major a letter to get out of the cell. So as I was writing letter, he reached down and snatched it out of my hand. He say, you writing another letter, roomie? I said, what you mean? He said, I seen the letter that Officer Smith had. Man came up to the bars and yell out to the bars in front of all the other guys, dude in the cell with me, he a snitch, he witnessed the killing of a lieutenant. Vaughn told everybody on the gallery, he hollered it out."

(Doc 127-1, pp. 23-24). Adams spent the rest of the day attempting to get a cell transfer.

Due to Adams' repeated requests, a correctional officer named Sergeant Eovaldi stopped by Adams' cell. (Doc. 127-1, p. 26). As Adams quietly told Sergeant Eovaldi about the cellmate issue, Vaughn yelled from the back of the cell that he had read the letter to Ms. Morrison (Doc. 127-1, p. 27). Sergeant Eovaldi responded by telling Adams to "be cool" and that he would "take care of this" (Doc. 127-1, p. 28). Sergeant Eovaldi then notified the other correctional officers of the issue, but neither Eovaldi nor the other correctional officers transferred Adams out of the cell (Doc. 127-1, p. 30).

The tension between Adams and Vaughn persisted and Vaughn told Adams that "you are not going to sleep in here," which Adams construed as a death threat (Doc. 127-1, p. 35). Sometime later that evening or early the following day, Adams requested a nurse so that he could

report a "crisis." *Id.* He was transferred to the HCU to be evaluated. *Id.* Adams spent the rest of his time at Menard in and out of protective custody. (Doc. 127-1, p. 37). The precise timeline of events is not entirely clear from the record, but Adams testified at his deposition that he only spent one day with Vaughn (Doc. 127-1, p. 38). Adams was not physically injured as a result of these events (Doc. 127-1, p. 67). All of his alleged injuries were mental or emotional. *Id*.

Adams filed this lawsuit on September 16, 2013 (Doc. 1). He was transferred to Pontiac on June 11, 2014, where he currently resides (Doc. 127-1, p. 11).

## DISCUSSION

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When presented with a motion for summary judgment the court must view all facts and reasonable inferences in a light most favorable to the nonmoving party. *Sartor v. Spherion Corp.*, 388 F.3d 275, 278 (7th Cir. 2004). The summary judgment phase of litigation has been described as the "'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003).

As the Supreme Court has held,"[a] prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 1974, 128 L. Ed. 2d 811 (1994). If a prisoner plaintiff has been physically injured or sexually assaulted as a result of a prison official's deliberate indifference, the prisoner plaintiff may recover monetary or nominal damages pursuant to 42 U.S.C. § 1983. *Babcock v. White*, 102 F.3d 267, 271 (7th Cir. 1996). If the

prisoner plaintiff has not yet been injured, the prisoner may seek prospective injunctive relief to "prevent a substantial risk of serious injury from ripening into actual harm [.]" *Farmer*, 511 U.S. at 845, 114 S. Ct. at 1983.

In this case, Adams has already been transferred to his preferred prison (i.e., Pontiac). Therefore, his request for injunctive relief is moot and Defendant Harrington is entitled to judgment as a matter of law. Thus, the sole issue remaining before the Court is whether Adams' claim against C/O Smith in his individual capacity survives for summary judgment.

A prisoner plaintiff's ability to obtain monetary damages under these circumstances is sharply limited. The Seventh Circuit has held that "failure to prevent exposure to risk of harm" type claims are not cognizable absent a prison "official's malicious or sadistic intent." *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996). Moreover, the Prison Litigation Reform Act provides that "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e).

In this case, Adams asserts that Smith placed him at a substantial risk of serious injury when Smith discussed the 1977 Stateville incident (and Ms. Morrison's letter) with inmate Vaughn. However, as the record reflects, Adams was never physically injured as a result of Smith's actions. Additionally, even assuming that Adams was at a substantial risk of serious injury when he shared a cell with Vaughn, Adams has not presented evidence from which a reasonable jury could conclude that Smith was deliberately indifferent to that risk or that Smith kept him in the cell due to "malicious or sadistic intent."

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 126) is **GRANTED**.

**IT IS SO ORDERED.**

**DATED:  July 14, 2016**

                                      **s/ Staci M. Yandle**
                                      **STACI M. YANDLE**
                                      **United States District Judge**